punishment cannot be death or imprisonment at hard labor.

(Syllabus by the Court.)

Appeal from Judicial District Court, Parish of Avoyelles; Gregory Horatio Couvillon, Judge.

C. Kalone and others were indicted for illegal voting at an election. From a judgment quashing the information, the state appeals. Dismissed.

Walter Guion, Atty. Gen., and Joseph W. Joffrion, Dist. Atty. (Lewis Guion, of counsel), for the State. Adolph Valery Coco, for appellees.

PROVOSTY, J. The state has appealed from a judgment quashing the information against the defendants for aiding and abetting illegal voting at an election at which the question of local option was submitted; and the defendants have moved to dismiss the appeal on the ground that the jurisdiction of this court in criminal matters is limited to cases where "death or imprisonment at hard labor may be inflicted, or a fine exceeding $300, or imprisonment exceeding six months, is actually imposed," and that for the offense charged the highest punishment that may be inflicted is a fine of $1,000, or imprisonment without hard labor not exceeding one year. Evidently the motion is well founded. Death or imprisonment at hard labor cannot be inflicted, and a fine or imprisonment exceeding six months has not been actually imposed. The appeal is dismissed.

BLANCHARD, J., concurs.

---

(34 South. 476.)

No. 14,723.

STATE v. NORMAND et al.

(May 11, 1903.)

CRIMINAL LAW—APPEAL BY STATE—DISMISSAL.

1. Appeal by the state in a criminal case from a judgment quashing an information. Appeal dismissed for want of jurisdiction of the Supreme Court ratione materiæ. See State v. Kalone et al., 34 South. 475, ante, p. 360, decided simultaneously.

(Syllabus by the Court.)

Appeal from Judicial District Court, Parish of Avoyelles; Gregory Horatio Couvillon, Judge.

C. R. Normand and others were indicted for crime. From an order quashing the information, the state appeals. Dismissed.

Walter Guion, Atty. Gen., and Joseph W. Joffrion, Dist. Atty. (Lewis Guion, of counsel), for the State. E. J. Joffrion, Tucker Horatio Couvillon, and Adolph Valery Coco, for appellees.

NICHOLLS, C. J. The state of Louisiana appeals from the action of the district court sustaining a motion to quash the information filed in this case against the defendants.

The state had also appealed from the action of the same court in quashing the information filed in the case of the State of Louisiana v. Kalone et al., 34 South. 475, ante, p. 360.

The defendants in each of these cases moved this court to dismiss the appeal for want of jurisdiction ratione materiæ.

The two cases involve the same point. They differ only as to facts which in no manner affect the question of jurisdiction. We this day sustained the motion filed to dismiss the appeal in the matter of State of Louisiana v. Kalone et al., and dismissed the appeal.

For the reasons assigned in that case, the motion to dismiss the present appeal is hereby sustained, and the appeal taken herein is hereby dismissed.

BLANCHARD, J., concurs.

---

(34 South. 476.)

No. 14,608.

PREJEAN v. WOGAN BROS.*

(March 16, 1903.)

SALE BY SAMPLE—ACTION FOR PRICE—RIGHTS OF BUYER—DEFENSES.

1. Plaintiff claims amount defendants bound themselves to pay for merchandise property, bought by them of plaintiff, and which they decline to pay on the ground that it was not equal in grade to sample furnished; and he claims other amounts for items stated.

*Rehearing denied May 25, 1903.

2. A buyer of products sold to him by sample furnished by vendor to be delivered f. o. b. should sustain the averment that the receptacle in which they were received was not the cause of their deterioration.

3. If, after a number of days following the date the products were placed in defendants' receptacles, the buyer finds that the goods are not of the quality of the sample furnished, he should show with some certainty that his receptacles had been cleaned, and were in a fit condition to receive the goods bought; they (the goods) being subject to be tainted by mixture.

4. Both parties to the suit, so far as the record to the suit discloses, are equally of good standing.

5. Taking particularly other evidence than their own into consideration, the court holds that plaintiff is entitled to the price defendants had bound themselves to pay.

6. The preponderance of the testimony shows that the samples furnished about the time the article was delivered were of the same quality as the product sold. The sample taken a few days after delivery shows an inferior quality.

7. The theory that the mixture with the remnants of an inferior article left in the receptacle after previous use of the receptacle, and not taken out at the time of delivery of the product in the receptacle tanks, has more to sustain it than has the theory that plaintiff sought to take advantage of defendants by passing upon them product inferior in grade to the sample furnished.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by Sylvere Prejean against Wogan Bros. Judgment for plaintiff, and defendants appeal. Affirmed.

Clegg & Quintero and Joseph Oscar Daspit, for appellants. Richard McCulloh and William Stirling Parkerson, for appellee.

BREAUX, J. Plaintiff sues the defendants for $2,800 damages claimed on the ground that defendants failed to receive molasses sold to them by plaintiff.

The issues are mainly of fact.

The contract in writing sets out that Sylvere Prejean, the plaintiff, sold, as per sample, about 40,000 gallons of molasses, at five cents a gallon, to be put free on board tank cars to be furnished by the buyers.

Plaintiff is a sugar planter; the defendants merchants in this city.

Plaintiff sets forth in his petition that in compliance with his contract he caused three tank cars to be filled with molasses; that they were insufficient in capacity to receive and contain the quantity sold; that on the 8th of June, 1901, they were gauged and found to contain an aggregate of 14,890 gallons of molasses; that, notwithstanding the fact that he complied with his contract, and had delivered the quantity of molasses before mentioned, and was ready to make delivery of the remainder sold, the defendants refused to carry out their part of the contract; that the molasses at his sugar house was in his way, required care, caused expense. He claimed for storage and for damages as alleged.

The defendants controvert plaintiff's allegations of their liability, and aver that on the 28th of June they purchased by sample of the plaintiff the number of gallons of molasses stated in the contract; that a few days after the receipt of the sample and after the date of the contract they sold by sample, being the same sample furnished by the plaintiff, to Taussig & Co., of New York, the entire quantity of molasses bought of the plaintiff; that in accordance with the contract they sent cars to the plantation of the plaintiff for shipment of the goods purchased; that a few days thereafter they received the three tank cars of molasses, which were of an inferior grade, not like the sample furnished; that they rejected the molasses on the ground that it was not the article sold; that they forwarded samples from this shipment to Taussig & Co., who rejected the molasses on the ground that it was not up to the sample originally sent. Defendants not only deny all indebtedness, but they reconvene, and as plaintiff in reconvention, because of loss of profit in the sale and on other grounds, claim $1,453.46.

From a judgment in favor of plaintiff for $2,000, less a credit of $623, defendants prosecute this appeal.

The condition as to cleanliness vel non of defendants' tanks plays an important part in this litigation.

With reference to this one of the defendants said as a witness that they gave direction to their foreman to see that every car that left the refinery was perfectly drained and sometimes steamed; that they have coils on their place which they apply to their cars, and in that way they are steamed and drained before they leave the refinery.

This witness said that he knew nothing with respect to the particular cars Nos. 1,908, 1,910, 1,898 that went to plaintiff's "Half Way Plantation" near Donaldsonville, and on which were the tanks in question, but that his foreman should know. Upon this subject the following questions were propounded to the foreman, and to these questions he answered:

"Q. What do you do with the tank car?

"A. Send it back according to his instructions.

"Q. Do you clean them?

"A. Not always, sir."

Plaintiff's engineer and one of his employés who saw to filling the tanks in question with molasses sold by plaintiff testify unequivocally that they saw the old molasses in the tanks of defendants' cars, which it seems was very inferior; that it covered the pipes therein, and that there were quite a number of gallons of it. Besides, it appears that there was a considerable gain to the number of gallons between the number sold and delivered by plaintiff to defendant and the number of gallons that defendant had on hand in his tanks when the whole bulk was measured. This tends to demonstrate that there was residue molasses in plaintiff's cars when they were tendered to defendants to be filled.

### Opinion.

At the outset we must deal with defendants' objection to the consideration of the testimony of witnesses (as coming too late) who testified that the three tank cars sent by defendants to the plantation of plaintiff on the Lafourche contained in them 12 to 14 inches of black strap molasses at the time they reached the plantation, and that the molasses sold by plaintiff to defendants was put in these tanks.

These witnesses had previously testified for plaintiff in chief, and were called in rebuttal after defendants' witnesses had testified that the molasses delivered by plaintiff to defendants was not the same grade as the sample.

Defendants urged that the testimony of the witnesses for plaintiff to prove that the tanks were not cleaned as they should have been was not rebuttal testimony; that it did not support the allegation of plaintiff's petition, or was not in answer to any plea in reconvention.

The district court overruled the objection. The testimony was admitted in evidence.

In our view, under the rule of evidence which obtains in this state, the testimony was admissible.

Plaintiff, it is true, had alleged that the sample and the bulk of the molasses from which it had been taken were the same. This, we take it, refers to the molasses as delivered by him.

The defendants, after plaintiff had rested his case, had shown by his witnesses that the molasses received at the place of business a few days after it had been delivered was not in accordance with sample.

It was competent, after defendants had closed, for plaintiff to introduce testimony to show that the deterioration in the grade had been occasioned after the molasses had been delivered, and because the tanks contained an inferior article, which should have been cleaned out before sending up these tanks to receive the molasses sold by plaintiff.

The defendant company in the trial was not illegally prejudiced by the ruling, as it had every reasonable opportunity to meet the issue, and prove, as it attempted to prove, that the tanks were perfectly clean.

### On the Merits.

We infer from the testimony that molasses is not an article which can be sold by sample with absolute certainty; that the sample will not always continue to be entirely the specimen of the bulk from which it is taken.

As well mention here that molasses is usually graded by color, flavor, and body, and sometimes by polarization.

After a little time its color and other qualities are affected and changed; it makes it a lighter color.

For instance, the testimony discloses that a sample of molasses on the first of the month will be different from another sample taken from the same bulk of molasses at the end of the month.

It seems also that the sample taken from the lowest portion of the body may be different from a sample taken at the top.

Again, if molasses is poured into a tank with bad molasses, it will make it a lower grade molasses, and change its color. The insistence of plaintiff in argument was that there was bad molasses in defendants' tank when he delivered the molasses he had sold to defendant firm.

We must say that the preponderance of the testimony sustains that contention of plaintiff, as appears in the statement of facts of the case.

Defendants, seeking to meet this charge, presented to plaintiff the point of his (plaintiff's) own weapon. Without admitting it, defendants say if it be true that there was black strap molasses in each of the tanks, plaintiff had knowledge of the fact, and putting the molasses which he had sold to defendants in these tank cars was a wrong on his part; that it was plaintiff's duty to have notified the defendants of the fact; that instead plaintiff had the entire contents of the tank cars gauged as his molasses; that he claimed it all—every particle; that he cannot thus object to the result; that, if the testimony of witnesses be true, then plaintiff attempted to defraud defendant in claiming molasses and demanding payment for it, and that he had thus assumed to adulterate good into bad molasses, and for that purpose sought to speculate at defendants' expense; that defendants did not know that there was black strap molasses in these tanks, if there was; that the testimony shows that defendants believed the tanks were clean, while plaintiff, from this point of view, knew there was black strap molasses in the tanks, and that he should have notified defendants.

The question suggests itself, was it not the duty of the defendants, as they were buying molasses on sample, to assure themselves with some certainty that each tank had been properly cleansed?

If it was, the testimony failed to show compliance with that requirement, when defendants' tanks, through their employés, were shipped to plaintiff's place.

With reference to the wrong intimated to have been committed by plaintiff in claiming all the contents of these tanks, we can only say that the testimony, taken as a whole, does not lead to the inference, as we take it, that either party was seeking an undue advantage.

The comparatively few gallons of black strap molasses in the tanks, if it was as stated, was not a "lure" sufficient to be considered a factor by which plaintiff was influenced.

He had sold molasses, which he sought to deliver in tanks furnished by defendants, and which defendants evidently thought were clean. Under the facts and circumstances, we do not find that there was negligence in not notifying defendants of the condition of its own tanks. It was part of defendants' business, after all, to send only clean tanks.

In selling by sample the vendor warrants that the specimen has been taken from the bulk of the commodity sold. He does not do much more than this. If, owing to causes growing out of the negligence or oversight of the buyer's employés, it loses something of its quality, the vendor cannot be held liable.

The samples furnished by the seller in bottles, also the sample in a barrel sent by plaintiff to defendants, showed that the molasses was as represented.

Those from the tank, after the molasses had rested some time in these tanks, were of an inferior quality, giving rise to an inference, before stated, which testimony for defendants has not rebutted.

It was centrifugal molasses, and not of that strong and superior quality from the first which repelled all mixing with an inferior, not even with the most inferior of all grades, of the molasses known of late years as the "black strap" grade, which witnesses testify was in the tanks at the time they were filled, and with which the molasses sold very soon mixed, the evidence shows.

We have given this case our careful consideration, examined carefully the testimony of each witness, and all the facts and attending circumstances. We leave it firmly convinced that justice has been done. We must decline to increase the amount claimed by plaintiff one cent.

We believe that he is entitled to recover the price for the molasses he sold, only that, and for that reason.

The law and the evidence being with plaintiff, the judgment is affirmed.